SHAW, Judge.
The appellant, Robert Pope, was indicted for felony driving under the influence (“DUI”), a violation of § 32-5A-191(h), Ala.Code 1975; driving while his license was revoked, a violation of § 32-6-19(b), Ala.Code 1975; failing to display evidence of insurance, a violation of § 32-7A-16(2), Ala.Code 1975; and unlawful possession of prohibited beverages in a “dry county,” a violation of § 28-4-20, Ala.Code 1975. Before trial, Pope pleaded guilty to driving while his license was revoked and to failing to display proof of insurance. Following a jury trial, the jury acquitted Pope of the DUI charge; Pope was" convicted of the unlawful possession of controlled beverages. The trial court sentenced Pope to serve 180 days’ imprisonment for driving while his license was revoked and 30 days’ imprisonment for failing to display proof of insurance; those sentences were to run concurrently. The trial court sentenced Pope to serve 90 days’ imprisonment for unlawful possession of prohibited beverages; that sentence was to run consecutively to the other two sentences.
The evidence adduced at trial indicated the following. Jim Webster, an officer with the Hartselle Police Department, tes *22 tified that at approximately 11:15 p.m. on April 27, 2002, he stopped a vehicle on Highway 36 West; he stated that the vehicle pulled into the parking lot of the West Hartselle Baptist Church. According to Officer Webster, while he was conducting that traffic stop, he observed another vehicle parked in the church parking lot; he stated that the driver of that automobile, whom he identified as Pope, appeared to be leaning on the steering wheel. Officer Webster testified that, after he finished the traffic stop of the first vehicle, he moved his patrol car behind the other vehicle, got out of his patrol car, and began to approach the vehicle on foot; Pope began to drive away at that time. According to Officer Webster, he got back into his patrol car, turned on his police lights, and pursued Pope. He stated that Pope was driving approximately 20 miles per hour in a 45-mile-per-hour zone; Officer Webster further stated that he called in the license plate number on Pope’s vehicle and that that number came back as being registered to another vehicle. According to Officer Webster, Pope pulled over approximately 100 yards east of the church. Officer Webster stated that he got out of his patrol car and approached Pope’s automobile; he stated that he then smelled alcohol and saw a can of beer between Pope’s feet on the floorboard. Officer Webster stated that once backup arrived, he had Pope get out of his vehicle and he asked Pope to perform field-sobriety tests; according to Officer Webster, Pope agreed to attempt the tests but he was unable to successfully complete the tests. Officer Webster further stated that “I asked him if he had alcohol this evening. He said, ‘I drank a couple of beers.’ ” (R. 44.) Officer Webster testified that he placed Pope under arrest for DUI and conducted a search of Pope’s automobile; he stated that he found four 16-oz. beers in a cooler in the front floorboard on the passenger side, as well as the open beer between Pope’s feet on the driver’s side floorboard. Officer Webster stated that he transported Pope to the police station and that once at the station Pope refused to submit to a Draeger breath-alcohol test. On cross-examination, Officer Webster stated that he decided to approach Pope’s automobile that night “[bjecause [it] was a suspicious vehicle at a church late at night, and [the driver] was leaning over his steering wheel” (R. 56), and that he “had a strong suspicion that [the driver] was intoxicated or he could be possibly attempting to go break into a church.” (R. 56.)
I.
Pope first argues that the trial court erred in denying his motion for a judgment of acquittal because, he claims, “the warrantless stop in this case was illegal and unjustified as no crime had been committed in the presence of the officer.” (Pope’s brief at p. 16)(emphasis omitted).
Initially, we note that, although Pope couched this claim in terms of a challenge to the trial court’s denial of his motion for a judgment of acquittal, the thrust of Pope’s claim actually goes to the legality of his arrest, rather than the sufficiency of the State’s evidence to prove a prima facie case of the charged offenses. However, it is well-settled that “[rjeview on appeal is limited to review of questions properly and timely raised at trial.” Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App.1989). “Even constitutional claims may be waived on appeal if not specifically presented to the trial court.” Brown v. State, 705 So.2d 871, 875 (Ala.Crim.App.1997).
“In order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific *23 grounds for the objection should be stated and a ruling on the objection must be made by the trial court.” Goodson v. State, 540 So.2d 789, 791 (Ala.Crim.App.1988), abrogation on other grounds recognized by Craig v. State, 719 So.2d 274 (Ala.Crim.App.1998). “When a timely objection at the time of the admission of the evidence is not made, the issue is not preserved for this Court’s review.” Ziglar v. State, 629 So.2d 43, 47 (Ala.Crim.App.1993). “ ‘An objection to a question, made after an answer is given, is not timely and will not preserve the issue for review.’” Roper v. State, 695 So.2d 244, 246 (Ala.Crim.App.1996), quoting Scott v. State, 624 So.2d 230, 234 (Ala.Crim.App.1993). See also Ex parte Crymes, 630 So.2d 125, 127 (Ala.1993) (holding that “[a] proper objection must be made after the question calling for objectionable testimony is asked and before the ivitness answers ”).
Here, Pope did not challenge the legality of the arrest until he made his motion for a judgment of acquittal at the close of the State’s case-in-chief. Officer Webster testified at length, without objection, about the events giving rise to the charged offenses. The beer cans collected from Pope’s automobile were admitted into evidence without objection, and there was no objection, at the time that he testified, to Officer Webster’s testimony about his observations at the scene and his discovery of the alcoholic beverages in Pope’s automobile. Thus, this claim was not preserved for our review.
II.
Pope next argues that the trial court erred in denying his motion for a judgment of acquittal because, he claims, the State did not prove that the substance in the containers was actually alcohol. Specifically, he claims that the State should have tested the alleged beer to determine the presence of alcohol.
Pope quotes the following excerpt from Blackwell v. State, 42 Ala.App. 246, 160 So.2d 493 (1964):
“We cannot notice or take judicial knowledge that ‘Falstaff beer cans and cartons’ express to a common intendment so as to dispense with bringing the claimed contraband before the jury or of opening at least one can so as to test its contents both as to alcohol and volume.”
42 Ala.App. at 248, 160 So.2d at 495. Pope also quotes the following excerpt from Leverette v. State, 594 So.2d 731 (Ala.Crim.App.1992):
“Furthermore, no testimony was offered to establish that any of the suspect cans actually contained beer or, in fact, whether ‘Miller’s Best’ is indeed a brand name for a line of malt or brewed beverages.”
594 So.2d at 732.
However, to distinguish the facts here from those in Leverette and Blackwell, we need only look to the two sentences preceding the above-quoted language from Leverette. In Leverette, this Court quoted the same excerpt from Blackwell that Pope has quoted in his brief, and then this Court stated:
“In the present case, as in Blackwell, the only evidence presented at trial to suggest that the appellant was in violation of § 28-4-201 was Deputy Stewart’s testimony that he saw one open can of ‘Miller’s Best’ on the floorboard and two unopened cans behind the driver’s seat of the appellant’s vehicle. Deputy Stewart testified that he seized these cans; however, they were not presented at trial or offered into evidence.”
594 So.2d at 732.
However, Leverette and Blackwell are distinguishable from this case. Here, Offi *24 cer Webster testified that he “detected the odor of alcohol and observed the beer between [Pope’s] feet” (R. 44); Officer Webster characterized the odor of alcohol as “drinking alcohol” (R. 75.) Officer Webster stated that he seized the open can of beer and, pursuant to police procedure, poured it out. Officer Webster also testified that a subsequent search of Pope’s automobile revealed 4 more 16-oz. containers of beers in a cooler on the front passenger side floorboard; those four cans of beer were then introduced into evidence. Thus, the State presented evidence that, if believed by the jury, indicated that Pope was in possession of beer, a prohibited beverage in Morgan County. See, e.g., Clark v. State, 53 Ala.App. 495, 301 So.2d 258 (Crim.App.1974) (distinguished from Blackwell where the witness handled one of the beer bottles in front of the jury and the jury was given the opportunity to examine all of the bottles). Therefore, Pope is not entitled to any relief on this claim.
III.
Finally, Pope argues that he was not given credit for time served in jail while awaiting trial.
Our review of the record indicates that Pope was arrested for the charges in this case on October 31, 2002, and that he posted bond and was released on November 1, 2002. On December 16, 2002, the Morgan County district attorney’s office filed a motion to revoke Pope’s bond, alleging that Pope had violated the terms of his bond by being arrested by the Cullman Police Department for third-degree domestic violence and possession of drug paraphernalia; that same day, the trial court granted the district attorney’s motion and conditionally revoked Pope’s bond and ordered that Pope be located and placed under arrest. On February 26, 2003, Pope’s case was called to trial; Pope did not appear, and the trial court issued an alias warrant for Pope’s arrest; a notice of forfeiture of bond was sent to A Discount Bonding Company, advising it that the bond they had provided was being revoked. On March 12, 2003, the bonding company filed a response advising the Morgan Circuit Court that Pope was, at that time, incarcerated in the Cullman County jail on other charges, and that that was the reason that he had failed to appear in Morgan Circuit Court when his case was called on February 26, 2003.
On May 3, 2003, the Morgan Circuit Court issued an order stating that it appeared that Pope was in the Cullman County jail and that Pope was to be brought on June 25, 2003, to the Morgan Circuit Court for his pending case. On August 13, 2003, Pope was brought before the Morgan Circuit Court. He argued that he was not present in Morgan Circuit Court on February 26, 2003, because he was incarcerated in the Cullman County jail on that date — it appears from the record that Pope was arrested in Cullman County for charges arising in that jurisdiction. On September 5, 2003, the Morgan Circuit Court noted on the case action summary sheet that Pope had failed to appear in Morgan Circuit Court for trial on February 26, 2003, because he was incarcerated in the Cullman County jail at that time; the Morgan Circuit Court reinstated Pope’s bond and recalled the arrest warrant for failure to appear.
Following his trial, the trial court conducted a sentencing hearing on December 9, 2003. At that hearing, Pope argued that he was entitled to credit for some of the time that he was incarcerated in the Cullman County jail because, he claimed, he was granted a probationary term for the charges in Cullman County, but was kept in the Cullman County jail after he was granted that probation because of a *25 hold order issued by the Morgan Circuit Court for his bond revocation in the Morgan County felony DUI case. Defense counsel further argued that counsel had calculated that Pope was entitled to approximately 240 days of pretrial jail credit for time served in the Cullman County jail; defense counsel also presented the trial court with a letter from Sgt. Jerry Teichmiller of the Cullman County Sheriff’s Office, dated August 14, 2003, in which Sgt. Teichmiller stated “Robert Heath Pope is incarcerated in the Cullman County Correctional Facility and has been here since December 13, 2002.” (C. 137.) We note that Sgt. Teichmiller’s letter does not indicate the reasons Pope was taken into custody in Cullman County or the reasons for his continued incarceration as of the date of the letter.
Further, defense counsel provided the trial court with what appears to be a copy of Pope’s inmate summary sheet from Cullman County, which Pope contends shows that he was released from the Cull-man County charges on October 31, 2002 (C. 136); thus, Pope contends, this sheet, coupled with Sgt. Teichmiller’s letter, indicates that he was held in the Cullman County jail pursuant to the Morgan County charge that formed the basis for the conviction in this case; therefore, he argues, he was entitled to jail credit for that time.
After hearing Pope’s argument, the trial court stated: “Pm going to order that he receives credit. The Clerk’s office will prepare an abstract of what they show to be the amount of time and if that for some reason does not appear to be accurate, then I guess, we’ll have to revisit it in some fashion.” (R. 138-139.)
The record contains a form bearing the case no. CC-02-1149, which appears to indicate that Pope is entitled to only two days of jail credit. That form, which is unsigned and which does not indicate who prepared it, notes Pope’s jail time as follows:
“10-31-02 IN 11/1/02 OUT
“6/25/03 IN 6/25/03 OUT
“12/9/03 IN STILL IN OUT”
(C. 131.) Below those entries, the words “2 days” are handwritten and circled. However, the “Alabama Judicial Data Center Morgan County Transcript of Record Conviction Report” form in the record appears to indicate, among other things, that Pope is to receive no days of jail credit; that form is dated December 12, 2003, and is certified as true and correct by John Pat Orr, the circuit clerk of Morgan County.
Section 15-18-5, Ala.Code 1975, provides:
“Upon conviction and imprisonment for any felony or misdemeanor, the sentencing court shall order that the convicted person be credited with all of his actual time spent incarcerated pending trial for such offense. The actual time spent incarcerated pending trial shall be certified by the circuit clerk or district clerk on forms to be prescribed by the Board of Corrections.”
In Blount v. State, 876 So.2d 509, 513 (Ala.Crim.App.2003), this Court remanded that case “to the trial court to determine and certify the actual time Blount spent incarcerated pending trial and to credit his sentence for time previously served.” See also Cochran v. State, 808 So.2d 1226 (Ala.Crim.App.2000).
Based on the record on appeal, it appears that the trial court ordered that Pope be given credit for any jail time he served pending trial; however, it also appears from the record that Pope was not given credit for any of that time. It is further unclear from the record as to exactly how much time Pope is entitled, either for time he apparently spent inearcer- *26 ated in Cullman County or for the time he spent in jail in Morgan County. Thus, a remand is necessary for the trial court to determine and certify the actual time Pope spent incarcerated before trial and to credit his sentence accordingly.
Because Pope’s claims challenging his conviction are without merit for the reasons discussed in Parts I and II of this opinion, his conviction for unlawful possession of controlled beverages is affirmed. With regard to Pope’s sentence, i.e., his claim that he was not given credit for time served in jail before trial, this case is due to be remanded to the trial court for the reasons stated in Part III of this opinion. On remand, the trial court should include in the record a certification by the circuit clerk as prescribed in § 15-18-5, indicating the actual time Pope spent incarcerated pending trial. The trial court may, in its discretion, conduct an evidentiary hearing or receive additional evidence in the form of affidavits or other means necessary to make its determination as to the actual time Pope spent in jail pending trial for the offense in this case. A return to remand shall be filed within 42 days of the release of this opinion.
AFFIRMED AS TO CONVICTION; REMANDED WITH DIRECTIONS AS TO SENTENCING. 
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.